# Vanderslice *versus* City of Philadelphia.

1. Where a municipality has undertaken to construct a sewer it is its duty to construct it properly and to keep it in good condition and repair; failure to perform these duties will render the city liable in damages.

2. Mere absence of notice that the sewer is out of repair will not necessarily absolve the city from the charge of negligence; its duty involves the exercise of a reasonable degree of watchfulness in ascertaining, from time to time, the condition of its sewers.

3. The city is presumed to have knowledge of an open defect after a reasonable time for its ascertainment and removal; but for a latent defect, the city will not be liable unless it had notice. A defect, which can be seen by the exercise of reasonable care and examination is not latent.

4. To bring home to a municipality notice of a defect in a sewer, it is not sufficient to report it to a member of the City Councils.

5. In an action by a property holder against a municipality to recover damages for injuries to property by the caving in of a sewer, *Held,* that evidence to show the condition of the sewer near the place of the accident, when examined three years before, was admissible and its exclusion was error.

6. In such case compensation for the loss is the measure of damages. The permanent injury to the buildings, the cost of repairs, the loss of rent for the time necessary to make the repairs, are elements affecting the market value; and the difference between that value in their injured condition and such value if uninjured, is compensation.

7. The fact that a municipal corporation employs an independent contractor to remove a nuisance does not deprive a party injured from recovering from the corporation damages occasioned by the continuance of the injury after the employment of such contractor, and until abated.

[Vanderslice v. City of Philadelphia.]

March 21st 1883.  Before MERCUR, C. J., GORDON, TRUN-
KEY, STERRETT and GREEN, JJ.   PAXSON and CLARK, JJ.,
absent.

ERROR to the Court of Common Pleas No. 1 of *Philadelphia
county :* Of January Term 1883, No. 184.

Case, by John M. Vanderslice, " assignee in insolvency of
Matthew Hall, to the use of Franklin Swayne, assignee in bank-
ruptcy of Matthew Hall," against the city of Philadelphia, to
recover damages for injuries to the property of said Hall,
caused, as alleged, by the negligence of defendant, in the con-
struction and maintenance of a sewer.

On the trial, before PEIRCE, J., the material facts appeared
to be as follows :

Matthew Hall, a builder. in 1878 erected a row of nine
houses on the north side of Brown street, west of Twenty-
seventh street.  The defendant had constructed in 1856 a
sewer five feet in diameter and nine feet wide, in the middle
of Brown street, which, according to plaintiff's testimony, was
carelessly and negligently built and improperly maintained in
the following respects :  There was no cradling or cribbing for
the sewer to rest upon ; it was built directly over a very deep
pond or hollow ; and, by reason of bad materials, and work-
manship, it had fallen into a state of ruinous decay.

The only evidence showing that any notice of the condition
of the sewer was given to the municipal authorities was that of
one Ogden, who testified .that he spoke of its condition to
several members of the city councils.

On August 1st 1878, a rain-fall of unprecedented severity
occurred in the city of Philadelphia, during which the sewer
gave way, and the ground in front of the houses caved in for
a length of seventy feet.  The buildings, some of which were
tenanted, settled ; causing cracks in the walls, and the cellars
were flooded.  By reason of their dangerous condition and the
surrounding dilapidation, the tenants vacated them and their
sale was injured.  There was some evidence that the houses
themselves were defectively and cheaply constructed, built upon
" made " ground, and that their vertical sinking was due to
insufficient foundations.

The plaintiff called Samuel Ogden, an engineer and con-
tractor, to testify as " to the condition of the culvert in 1875,
when witness repaired it within twenty feet of the break in
1878 ?"  Objected to.  Objection sustained. (Second assign-
ment of error.)  The same witness was also asked :  " Did you
find any evidence of previous cradling ?"  Objected to.  Ob-
jection sustained.  (Third assignment of error.)

The defendant called S. E. Cavin, to testify as to the value
of his property at 727 North Twenty-seventh street, purchased

[Vanderslice *v*. City of Philadelphia.]

at sheriff's sale. Objected to, the house being different in locality and character. Objection overruled. (Fifth assignment of error.)

The plaintiff presented the following points:

"1. If the jury believe that the culvert, at the place of fracture, where it gave way, was out of repair by reason of decay, and by reason of such decay it failed to carry off the water then the defendant is liable for the consequences." Refused. (Sixth assignment of error.)

"3. If the jury find from the evidence of Ogden, that the culvert broke in 1875 and 1878 at or about the same point; that the walls of the culvert were egg-shaped inside at several points near the the fracture; that there was a dent or depression of several feet in the car track immediately over the place at which it broke; that the car track sunk several feet; that a crow-bar sunk of its own weight through the bottom, without resistance, and that Ogden notified the city officials of its bad condition in 1875, these facts are evidence of negligence on the part of the defendant, if they did not repair it at that point."

Answer. You will remember the circumstances. Mr. Ogden, who was the party employed to repair the sewer in 1875, not immediately at this point, but about twenty feet away from it, says that he examined the sewer at that time at the point where it subsequently broke in 1878; that he there found this oval or egg-shaped form, which was caused by pressure, and that he told certain parties connected with the city about it, councilmen, and others, who were there from time to time; that he reported the matter to Mr. Armstrong, who was the contractor to repair sewers, and in whose employment he then was, and he presumed that these parties or the city authorities knew of it. I do not know that his evidence goes beyond that point. He does not testify that he gave notice to anybody connected with the highway department, the parties who were there as connected with the city he only spoke of as councilmen, and it would be for you to say whether that point is sustained by the evidence. If not sustained by the evidence, why, of course, there was no knowledge or information on the part of the city, that the sewer was defective, and she would not be liable, as she would be if she had knowledge of the fact, because then it would be evidence of negligence on her part not to repair the sewer. There was further evidence respecting the indentation of the surface at or about this point. There is no direct evidence that notice of this was brought home to the city. I suppose there is a duty incumbent upon the commissioner of highways and his agents to know the character and condition of the streets where defects are long prevailing. A

[Vanderslice *v.* City of Philadelphia.]

recent injury might escape attention ; but if there be evidence of continued negligence and injury consequent upon it, the city is liable as it is the duty of the highway department to look after the condition of the streets.    I only mention this matter in this general way in the absence of any direct proof that notice was brought home to the city authorities of the condition of the highway as showing the objectionable condition of the sewer beneath it.    (Eighth assignment of error.)

" 7. In estimating damages the jury are to include actual injury to the buildings and loss of rentals during the repairs, and the depreciation in their selling value.

Answer.   If you find a verdict for the plaintiff, of course, the next question will be, what would be the amount of damage which the plaintiff has sustained.   The supreme court in several cases has said that in a case of this character in estimating the damages, the jury are to view the injury to the property at the time the injury was suffered, without reference to the person of the owner or the state of his business.   The measure of such damage is the difference between what the property would have sold for as affected by the injury, and what it would have brought unaffected by such injury.   That is the difference in value at the time of the injury between the property as injured to the extent that it was then so injured, and its value immediately before the injury occurred."   (Twelfth assignment of error.)

The following points were presented by the defendant :

2. If the jury believe the sewer burst by reason of the unprecedented fall of rain on August 1st 1878, the city is not chargeable with negligence, such excessive rain-fall being the act of God."

Answer.   The principle of law is that the act of God works no injury.   If damage or injury result, it cannot be charged against parties if, in the language of the law, it is the act of God.   I do not affirm that point as put, but qualifiy it thus : That if the jury believe the sewer burst only by reason of the unprecedented fall of rain, on August 1st 1878, the city is not chargeable with negligence, such excessive rain-fall being the act of God.   (Thirteenth assignment of error.)

" 4. That the sewer on Brown street, having been well constructed, and the plaintiff not having shown that the city had any notice that it was, prior to the rain on August 1st 1878, out of repair, the city is not liable for the bursting thereof, nor of the consequent caving in of the street."

Answer.   The fourth point I affirm as qualified.   I qualify it by saying : if the jury find that the sewer on Brown street was well constructed, and that the plaintiff has not shown that the city had any notice that it was, prior to the 1st of August

1878, out of repair, the city is not liable for damage caused by the bursting of the sewer, and the consequent caving in of the street.    (Fourteenth assignment of error.)·

"6. That the said James Armstrong, in repairing the said sewer, was an independent contractor, and the city is therefore not liable for damages growing out of any wrong committed by him, or the results of any delay or negligence on his part.    The city can in no event be held liable for damages resulting to the plaintiff after the morning of August 2d 1878, when the contractor commenced his work."

Answer.    I affirm the sixth point as qualified : That the said James Armstrong, in repairing the said sewer was an independent contractor, and that the city is therefore not liable for damages growing out of any wrong committed by an act, or the result of any delay or negligence on his part.    (Fifteenth assignment of error.)

"8. That the plaintiff cannot recover in any event except for the actual diminution of the value of his property.    He cannot recover for the loss of the rents, such damages being remote and consequential."

Answer.    Affirmed.    (Sixteenth assignment of error.)

"10. The city cannot be held liable for the consequences flowing from a latent defect in the sewer unless notice of such defect was brought home to the notice of the official of the city charged with remedying such defect, which the plaintiff must establish."

Answer.    Affirmed.    (Seventeenth assignment of error.)

Verdict for the defendant and judgment thereon.    The plaintiff thereupon took this writ of error, assigning for error the exclusion of Ogden's testimony, the admission of that of Cavin, and the answers to his and defendant's points as above.

*Pierce Archer*, for plaintiff in error.—Actual notice need not be shown to entitle the plaintiff to recover.    It is the duty of a municipality to take notice of the age of a sewer, its natural decay by time and its defects of construction.    The city's supervisors and inspectors alone have the right to traverse these underground passages.    The citizen is not required to give notice of facts not within his knowledge, to those whose duty it is to inspect and repair.    The city having constructed a sewer is bound to properly maintain it, and its duty is to inspect and repair : Rochester Co. *v.* Rochester, 3 N. Y. 463 ; Parker *v.* Lowell, 11 Gray 353 ; New York *v.* Furze, 3 Hill 612 ; McCarthy *v.* Syracuse, 46 N. Y. 194 ; Barton *v.* Id., 36 Id. 54 ; Albany Law Journal, Dec. 26th 1874, page 401 ; Wallace *v.* Muscatine, 4 Green 373 ; Barton *v.* Syracuse, 37 Barb. 292 ; Storrs *v.* Utica, 17 N. Y. 104 ; Child *v.* Boston, 4 Allen 41.

[Vanderslice *v.* City of Philadelphia.]

*Charles E. Morgan, Jr.* (with him *Wm. Nelson West* and *A. M. Beitler*), for the defendant in error.

Mr. Justice TRUNKEY delivered the opinion of the court, April 16th 1883.

At the trial, the learned judge of the common pleas recognized the rule that a municipal corporation having determined upon the construction of a sewer, is bound to construct it properly and keep it in good condition and repair, and that negligence in the performance of those duties will render the city liable for damages resulting therefrom. He distinctly submitted to the jury to find whether the injury to the houses was caused by the faulty construction of the sewer, or the negligence of the city to keep it in repair, or by the faulty manner of building the houses upon made ground. Their attention was clearly directed to the main point in contention, namely, whether the houses were injured by reason of a break in a defective sewer, negligently unrepaired, or by reason of their own defective construction. With reference to this there is no cause for exception, but the rulings on some other questions are assigned as erroneous.

In answer to the defendant's fourth point the court charged that if the sewer " was well constructed, and that the plaintiff has not shown that the city had any notice that it was, prior to the 1st of August, 1878, out of repair, the city is not liable for damage caused by the bursting of the sewer, and the consequent caving in of the street." Mere absence of notice does not necessarily absolve the city from the charge of negligence. Its duty to keep its sewers in repair is not performed by waiting until notified that they are out of repair, and repairing them only when the attention of the officials is called to the damage resulting from their dilapidation or obstruction ; but it involves the exercise of a reasonable degree of watchfulness in ascertaining their condition, from time to time, and preventing them from becoming dilapidated or obstructed. When the obstruction or dilapidation is an ordinary result of the use of the sewer, which ought to have been anticipated, the omission to make an occasional examination, and to keep the sewers in apparent good repair, is a neglect of duty which renders the city liable : McCarthy *v.* City of Syracuse, 46 N. Y. 194. Where the defect is observable and has existed so long as to become notorious, the city is liable as if there had been express notice. The city is presumed to have knowledge of an open defect after a reasonable time has elapsed for its ascertainment and removal : Requa *v.* City of Rochester, 45 N. Y. 129. Where there is a latent defect which causes an injury the city is not liable for the damages unless it had notice ; but a defect is not

[Vanderslice *v.* City of Philadelphia.]

latent which can be seen by the exercise of reasonable care and examination. If the alleged defect in the sewer where the break occurred was patent for so long a time prior to the injury, that it ought to have been discovered and repaired by the city, the plaintiff may recover without establishing actual notice. It follows that the answer to the defendant's fourth point was error, and in so far as that ruling pervaded the answers to other points, and the charge, there was error.

The court charged, in response to the defendants second point, " That if the jury believe the sewer burst only by reason of the unprecedented fall of rain, on August 1st 1878, the city is not chargeable with negligence, such excessive rain-fall being the act of God." This proposition is sound, yet without explanation it may have been misunderstood and misapplied. There is no evidence that the unprecedented fall of water beyond the capacity of the sewer to receive and carry off, injured the foundations of the sewer or weakened it externally by washing away its supports. It is plain that the large fall of water bursted the sewer, and equally plain, if the testimony is true, that the sewer was in such bad condition as to be likely to break whenever there should be a fall of water equal to the maximum the sewer was designed to receive and carry off. If the sewer was constructed in a workmanlike manner and due care had been taken to keep it in proper order, and it was broken only by a rain-fall so extraordinary as to be without the range of probability, the city was not chargeable with negligence. But if the break was owing to the defective condition of the sewer, and the city had omitted the duty to examine and keep it in repair, the case is different. If properly constructed and in good repair, would the water which entered its inlets have passed through without causing a break ? If so, the break should not be imputed to an unprecedented rain-fall. The plaintiff complains that said second point had no application to the evidence, but there was some evidence, even if slight, that the rain-fall taxed the sewer beyond its maximum capacity. He might have secured an instruction appropriate to the case enabling the jury to see the bearing of the proposition, by a point that did not assume that the fact of an unprecedented storm could not be considered ; that fact could not be taken from the jury when there was evidence of it ; and one witness said the sewer was "built for one inch rain-fall; two inch caused it to break."

A number of the plaintiff's points were rightly refused because each prayed instruction that the city was liable without stating therein all the requisite facts. For instance, his first point was : " If the jury believe that the culvert, at the place of fracture, where it gave way, was out of repair by rea-

son of decay, and by reason of such decay it failed to carry off the water, then the defendant is liable for the consequences." Had that been affirmed it would have been unnecessary to determine whether the city had been notified of the defect, or could have discovered the defect by the exercise of reasonable care and watchfulness.

From the testimony as stated in the bill of exceptions, it does not appear that Ogden gave notice of the bad condition of the sewer to the proper officer—it was not enough to report it to a member of council—and the refusal to affirm the plaintiff's third point was not error. No part of the answer to said point is embraced in the eighth assignment.

The second and third assignments must be sustained. It was competent for either party to prove the condition of the sewer, at and near the place of the break on August 1st, 1878, previous to that date. If it was in bad condition as long before as 1875, that was a pertinent fact on the question of omission to examine and repair within a reasonable time.

If S. E. Cavin had seen the plaintiff's houses and had knowledge of the value of that kind of property in their neighborhood, he could have been asked what they were worth; but not in chief what he paid for his own property. The fifth assignment is well taken, yet the error of admitting the testimony was not so grave as in itself to require reversal.

The twelfth, fifteenth and sixteenth assignments are to the rulings of the court relating to damages, namely, that the plaintiff can only recover the actual diminution of the value of his property; that he cannot recover for loss of rents, and that "the city can in no event be held liable for damages resulting to the plaintiff after the morning of August 2d 1878, when the contractor commenced his work."

The buildings were new and in the market for sale or rent. Compensation for the loss is the measure of damages. Permanent injury done to the buildings, costs of repairs and the loss of rent for the time necessary to make the repairs, are elements affecting the market value, and the difference between that value in their injured condition and such value if uninjured, is compensation. Under the evidence, actual compensation does not include a supposed loss of rents for a longer time than necessary to make the repairs.

But the plaintiff is entitled to recover for all damages directly caused by the defendant's negligence. The break immediately resulted in a deep pond in front of the plaintiff's buildings, which could not be removed for considerable time, and which doubtless continually added to the injury until removed. The same cause did the injury on the first of August, which was increased after the next morning. Why divide the

damages? If the entire injury was done by default of the city how can the city shift liability for a part. The reasonable time occupied by the contractor in pumping out the water and filling the pit with earth, ought not to relieve the party who necessitated that work. There is some difference between the case where the contractor's negligence causes injury, and the case where a contractor is employed to remove a nuisance which continually increases the extent of an injury until abated. An independent contractor is liable for his own wrongful acts which damage another; but not for the direct consequences of the negligence of his employer. The defendant's sixth point should have been refused.

Judgment reversed, and venire facias de novo awarded.