## Herr *v.* Altoona, Appellant.

*Road law—Sewers—Change of grade—Damages—Remedy.*

Where a municipality through its councils has adopted a plan for grading a street and constructing a sewer, and has made the improvements in accordance with the plan, and without negligence, a property owner whose property has been injured by the work cannot maintain an action of trespass against the municipality for the injuries sustained; where, however, after the completion of the improvement the municipality permits a vent in the sewer to become and remain closed, in consequence of which there is a backage of water into the owner's cellar, he may maintain an action of trespass for such injuries; but in such action he cannot recover for the injuries resulting from the original construction without negligence. For such injuries he must pursue the statutory remedy.

Argued March 13, 1905.  Reargued, April 18, 1906.  Appeal, No. 49, Oct. T., 1904, by defendant, from judgment of C. P. Blair Co., Oct. T., 1900, No. 19, on verdict for plaintiff in case of William H. Herr v. City of Altoona.  Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.  Reversed.

Trespass to recover damages for injuries to real estate.  Before BELL, P. J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[Were it not for one alleged fact in this case we would not submit this question of negligence on the part of the city to you at all; but it is alleged on the part of the plaintiff that this filling up of the channel was in direct opposition to the judgment and professional opinion of Mr. Linton, the engineer of the defendant city.  You will recollect Mr. Linton's testimony on that point.  There is some controversy between counsel just as to what he did say.  You heard it, and you are the final arbitrators as to just what he did say.  It is claimed on the part of the defendant that when he said the channel was filled up in opposition to his judgment, that he was referring to the channel on Sixth avenue alone, that he was not referring to the old channel on Twenty-fourth street from Sixth

avenue to Ninth avenue. It is alleged, however, on the part of the plaintiff that he was referring to all of that old channel northwest of Fifth avenue, or north of the Logan Valley Railway; and, if the contention of the plaintiff is right in this matter, and if Mr. Linton did say that he was opposed to filling up this old channel northwest of Fifth avenue, that would include, necessarily, the channel up on Twenty-fourth street and you would then consider whether the city, in view of all the circumstances, were guilty of negligence if they allowed this channel to be closed up, in disregard of the judgment and advice of their own engineer. Now, you will consider all this evidence on the question of negligence on the part of the city. If there was no negligence on the part of the city in closing up this old channel, that is an end of plaintiff's right to recover that element of damage, and, in fact, would be an end to his right to recover any damage, because his whole claim is founded on negligence in closing this channel.] [1]

[On this question of damage by reason of surface water, we feel free to say to you that that question of damage would be but inconsiderable, because Mr. Herr testified substantially that his main ground of damage was not from surface water, but from sewage backing into his cellar. But if he was damaged by surface water, then you should allow him the amount of damage which the weight of the evidence shows he has sustained by reason of surface water getting into his cellar.] [2]

Verdict and judgment for plaintiff for $365.75. Defendant appealed.

*Errors assigned* were (1, 2) above instructions, quoting them, and the portion of the charge quoted in the opinion of the Superior Court.

*Thomas H. Greevy*, for appellant.—In the absence of negligence on the part of municipalities, there can be no recovery for damages resulting from the insufficient capacity of a sewer causing overflow: Fair v. Phila., 88 Pa. 309, and Collins v. Phila., 93 Pa. 272, followed; Fairlawn Coal Co. v. Scranton, 148 Pa. 231; Bealafeld v. Verona Borough, 188 Pa. 627; Sullivan v. Pittsburg, 5 Pa. Superior Ct. 357; Pressman v. Dick-

son City Borough, 13 Pa. Superior Ct. 236; Michener v. Phil-
adelphia, 118 Pa. 535; Gift v. Reading, 3 Pa. Superior Ct.
359; Flagg v. Worcester, 79 Mass. 601; Stewart v. Clinton,
79 Mo. 603.

*A. V. Dively,* of *Dively & Dively,* for appellee.—In regulat-
ing the flow of surface water on the streets, municipalities
have no right to cast it upon adjacent property: Borough of
West Bellevue v. Huddleston, 23 W. N. C. 240; Elliott v. Oil
City, 129 Pa. 570; Weir v. Plymouth Borough, 148 Pa. 566.

OPINION BY RICE, P. J., June 30, 1906:

Dry Gap Run, a natural water course, ran along Twenty-
fourth street from Ninth avenue to Sixth avenue, and then
turned to the south.   Owing to its having become contaminated
by sewage, and perhaps for other reasons, the city constructed
a sewer in the street, and turned the stream into it, but did
not at once close up the old channel.   It is alleged that a vent
was placed in the sewer, so that in times of flood, when the sewer
should be insufficient to carry the whole volume, the surplus
could escape into the old channel and be carried off in that way.
Afterwards, in the latter part of 1894, or early part of 1895,
the city filled the old channel, which was at one side of Twenty-
fourth street, and as a substitute curbed the street on both
sides, and lowered the grade in the center, or, as one of the wit-
nesses describes it, " concaving it, making the center of the
street the channel instead of the side." The description of
what was done, testified to by the street commissioner, will aid
to a correct understanding of the legal questions for decision.
He says: " By resolution of council we graded Twenty-fourth
street and made it in shape, kind of a dip to carry the water
down in case of an overflow, made it deeper in the center than at
the sides, so in case of an overflow the water would run down
Twenty-fourth street." The evidence as to the effect of these
changes upon abutting and neighboring properties is conflicting,
but there is evidence from which a jury could find that they
were affected injuriously thereby.   In this action, brought in
1900, the plaintiff, who was the owner of several houses and
lots in the vicinity, claimed on the trial that they were inju-
riously affected, in that, since the city filled the bed of the

stream, changed its course, and built the sewer, at each heavy rain, " the said subway or sewer not having sufficient capacity to carry away the water which was wont to flow formerly in the channel of said Dry Gap Run," the water now (1) flows over the surface of the land, and enters his cellar windows, and (2) backs up from the sewer through his drain pipes and accumulates in his cellars. He also alleged another cause of damage which we shall consider later and separately.

It is to be observed that this was an action of trespass. The question is not whether the plaintiff could recover for the alleged injuries in the method provided by the statutes where a municipal corporation injures private property in the changing of grade of streets, and changing water courses. By suing in trespass the plaintiff elected to treat the defendant's action as tortious and must prove that it was so, or fail in his suit: Cooper v. City of Scranton, 21 Pa. Superior Ct. 17 ; Robinson v. Boro. of Norwood, 27 Pa. Superior Ct. 481. In the first case our Brother PORTER stated the rule and the reasons for it as follows : " The ascertainment of the damages and benefits arising from the execution of a public work by a municipality, is a matter in which the public has, and many private individuals may have, an interest. It is important that those who are to receive compensation for injuries, and those who are to pay for benefits accruing to the property, should all be heard before the same board of viewers, in order that all conflicting rights may be considered. The measure of damages in such a case is different from that which applies in an action of trespass. The benefits to the property as a whole must be taken into consideration, in connection with any injury that may result to land or buildings. If each individual owner of land upon a newly graded street were permitted to settle his rights in an action of trespass, the result would lead to confusion and be prejudicial to the rights of the public. When the injury to property is such only as is the direct, immediate and necessary or unavoidable consequence of the act of eminent domain itself, irrespective of care or negligence in the manner of the execution of the work, a proceeding before viewers is the appropriate remedy : Denniston v. Philadelphia Company, 161 Pa. 41 ; Stork v. Philadelphia, 195 Pa. 101."

So in the second case it was held that where a borough has

adopted a plan for the grading and improvement of streets in a manner authorized by law, the courts are without jurisdiction to review the exercise of the discretion of the borough authorities.    Whatever damages necessarily result from the action of the borough are recoverable in a proceeding before viewers, without regard to whether the borough might have adopted some other plan by which the injury to the property would have been avoided.    The borough cannot be held liable to answer in an action of trespass because the plan adopted by its officers was not the best that engineering skill might have devised.    The principle upon which these two cases were decided has been recognized and applied in many other cases, which are therein cited.    It is clear, therefore, that the learned trial judge was right in charging the jury " that before the plaintiff can recover he must show by the weight of the evidence negligence on the part of the city."    But we are unable to concur in his conclusion that the evidence referred to in the first assignment was sufficient to warrant submitting to the jury the question whether the city was negligent in closing up the old channel.    This was part of the plan which the city had power to adopt and put in operation without liability in trespass (however it might be in the statutory proceeding), except for negligence in the execution of it.    There are few municipal improvements concerning which there is not room for honest difference of opinion as to the plan which would be best suited to accomplish the desired end.    The law does not vest the power of conclusively deciding such questions in the city engineer.    He may advise, but the duty and power of deciding are vested in councils.    Moreover, there are other considerations besides the superiority of one plan over another, viewed as engineering propositions, which may properly influence councils in deciding between them.    So that, even though the city did go contrary to the opinion and advice of the city engineer, that fact would not convict the city of negligence in adopting the plan.    As there was no other evidence of negligence, so far as the original construction is concerned, there was no right of recovery in this action because of the insufficient capacity of the sewer, or of that in connection with the changes of the water course, and the grading, concaving and curbing the street.

To be more explicit, there was no right of recovery unless there was negligence on the part of the city in permitting of the vent in the sewer, heretofore spoken of, to become and remain closed, and in consequence the water and sewage backed into the plaintiff's cellars through his drains. Upon this feature of the case the court charged the jury as follows : " In this case there is no allegation that there is any negligence on the part of the city in the construction of that sewer, but the plaintiff does allege there was negligence on the part of the city in maintaining the sewer after it was constructed, and as we understand the claim of the plaintiff, the negligence consisted in allowing a relief outlet at Sixth avenue and Twenty-fourth street to be closed up. Defendant replies that that could hardly be alleged as negligence on the part of the city by plaintiff, because when Engineer McFalls was on the witness stand plaintiff, by his objection, virtually absolved the city from negligence in maintaining the sewer. But the plaintiff claims that there was a relief valve or relief opening. We are left a little in ignorance as to just what the character of the opening was, but we suppose it was an opening arranged so that when the sewer was not filled with water it would close and remain closed and keep the odors in the sewer; then when the sewer became filled with water it would open automatically and leave the water out. The plaintiff alleges that this was a necessary part of the sewer. It was put in by the city engineer, and that they thought that was the proper way to construct a sewer, and that they put it right here on Sixth avenue and Twenty-fourth street because here was the channel running along the northwest of the Sixth ward school, which would vent the water which flowed out of this sewer at this opening in times of flood; and that a reasonable supervision of this sewer on the part of the city would have disclosed to the city the fact that somebody had closed up this channel on Sixth avenue, and had closed up this relief vent. Now, on this question, we instruct you that the city is not an insurer of the proper maintenance of that sewer. All the city is bound to do is to exercise reasonable supervision, such supervision as a person of ordinary prudence and judgment under the circumstances would exercise, to see that it was kept in order. The defendant alleges that they did not close that sewer up at all;

that it was the unauthorized act of Stall Brothers in dumping dirt there in closing that Sixth avenue channel and closing up the relief valve; that the city had nothing to do with it. The plaintiff replies to this that a reasonable supervision of the sewer and the street in that locality could have disclosed to the proper city authorities if they had exercised that supervision, that the valve or relief opening was closed up and it must have been closed up for several years, and the city took no steps to open it, and that the city is negligent in this matter and that they should be paid the damages which are the direct result of this negligence. You will determine on the weight of the evidence whether the city was negligent in maintaining this sewer, in alleging the relief valve at Sixth avenue and Twenty-fourth street to be closed up."

The foregoing summary of the evidence pro and con is sustained by the record, and under the law applicable to the facts the jury could have found, there might be a recovery of damages for the injury to the plaintiff's premises directly traceable to the closing of the vent. Mere absence of notice does not necessarily absolve a city from the charge of negligence. Its duty to keep its sewers in repair is not performed by waiting until notified that they are out of repair, and repairing them only when the attention of the officials is called to the damage resulting from their dilapidation or obstruction; but it involves the exercise of a reasonable degree of watchfulness in ascertaining their condition from time to time. "Where the defect is observable and has existed so long as to become notorious, the city is as liable as if there had been express notice. The city is presumed to have knowledge of an open defect after a reasonable time has elapsed for its ascertainment and removal: " Vanderslice v. Philadelphia, 103 Pa. 102; Boehm v. Bethlehem Boro, 4 Pa. Superior Ct. 385. Our conclusions upon this branch of the case are: first, the questions of the city's negligence in this particular, and of consequent injury to the plaintiff, were questions of fact, which fairly arose upon the evidence and were properly submitted to the jury; second, to the extent, and only to the extent, that the backing of water and sewage through the plaintiff's drains in consequence of the negligence of the city in this particular, contributed to the injury complained of, the city is liable;

third, but to the extent that the injury complained of was consequent upon the lawful exercise of its discretionary power, as heretofore explained, the city is not liable in this action; fourth, the difficulty of determining the proportion of injury attributable to the city's negligence, and the proportion attributable to its exercise of the discretionary power to change the grade of streets and water courses, and to construct sewers, is not a valid reason for holding that damages for both may be recovered in this action. Upon the last point we cite Little Schuylkill Nav., etc., Co. v. Richards's Adm., 57 Pa. 142; Gallagher v. Kemmerer, 144 Pa. 509, where the difficulty of apportioning the damage between several trespassers, not acting in concert, was considered. The remarks of the court in the first case are quite as pertinent in a case like that before us.

Manifestly the alleged injury resulting from permitting the relief vent in the sewer to be closed was not permanent in its nature; in other words, the presumption is, that the negligent condition will be remedied by the city, if that has not been done already, not that it will be permitted to continue permanently. Therefore the damages are to be assessed accordingly. The ordinary rule applicable to such case is that the cost of restoring the premises to their original condition, if that can be done, together with compensation for the loss or impairment of the use of the premises meantime, is the measure of damages. In the present case, having regard exclusively to the only ground of recovery that exists under the evidence, we cannot see that the cost of putting in traps and cementing the cellar floors would be the proper measure of damages, unless that would be less than the proportionate part of the loss in rental value attributable to this particular injury, in which latter case such cost might be. This is as far as we need go in discussing the question of the measure of damages. In view of our conclusions upon the main questions separate discussion of each assignment of error is unnecessary.

The judgment is reversed, and a venire facias de novo awarded.