# Barrett *v.* Minersville Borough, Appellant.

*Boroughs—Streets—Gutters—Drainage of surface water—Injury to property.*

1. A city is not liable to a property owner for the increased flow of surface water over or onto his property, arising merely from the changes in the character of the surface produced by the opening of streets, building of houses, etc., in the ordinary and regular course of the expansion of the city.

2. Where a borough constructs a paved gutter along a street for the purpose of draining the surface water, and ends the gutter at the borough limits, and the work is done without negligence, and with proper material, and there is no increase of the flow of water caused by any act of the borough itself, the mere fact that the borough plan did not include any provision for disposing of the water, when it came to the end of the gutter, will not render the borough liable in trespass for injuries to property in an adjoining township caused by the water flowing onto it from the end of the gutter.

3. Under the Act of May 16, 1891, P. L. 75, as amended by the Act of June 12, 1893, P. L. 459, a proceeding before viewers is the appropriate remedy for an injury caused by street improvement in a borough, which is the direct, immediate, necessary and unavoidable consequence of the exercise of the power conferred on the borough by the act; while for an injury resulting from the negligent performance of the work, the remedy is by action of trespass.

4. The discretionary power to construct sewers, drains and other improvements, and to select a plan for the work, is vested in the municipal authorities.

Argued March 11, 1908. Appeal, No. 69, Oct. T., 1907, by defendant, from judgment of C. P. Schuylkill Co., Sept. T., 1906, No. 228, on verdict for plaintiff in case of George Barrett, Jr., v. Minersville Borough Corporation. Before Rice, P. J., Porter, Henderson, Morrison, Orlady, Head and Beaver, JJ. Reversed.

Trepass to recover damages for injuries to real estate. Before Marr, J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[If, on the other hand, you find that the flow of water upon

the plaintiff's premises or upon his leasehold estate was caused by the construction of the gutter, either in the fact that it cast a greater lot of water upon his premises, which was accumulated from the streets surrounding that spot, if you find that is the truth, then he would be entitled to such damages as would compensate him for such an injury arising from such an act on the part of the borough.] [1]

Defendant presented these points:

1. If you find that no greater area of ground has been drained by the laying of the gutter on South Delaware avenue, referred to in the evidence, your verdict must be for the defendant. *Answer:* This request is denied, as, if no greater area of ground has been drained, yet, if the jury find that the construction of the gutter caused a greater flow of the surface water to be cast upon plaintiff's leasehold estate than existed before the construction of the gutter, and an injury arose therefrom, defendant may be liable. [2]

6. Under all the evidence your verdict must be for the defendant. *Answer:* Refused. [4]

Verdict and judgment for plaintiff for $175. Defendant appealed.

*Errors assigned* were (1, 2, 4) above instructions, quoting them.

*John B. McGurl,* for appellant.—The premises occupied by the plaintiff as tenant, being lower in grade than the street, were, consequently, under a servitude to receive the natural drainage of surface water from said street: Martin v. Riddle, 26 Pa. 415; Reed v. Tarentum Boro., 213 Pa. 357; Sigfried v. So. Bethlehem Boro., 27 Pa. Superior Ct. 456; Fair v. City of Philadelphia, 88 Pa. 309; Allentown v. Kramer, 73 Pa. 406.

Admitting for the purpose of argument that the construction of this gutter did cause more water to flow upon the premises of plaintiff's leasehold than previously, we submit that such increase could not, under the circumstances of this case, be construed to be negligence on the part of the defendant: Allentown v. Kramer, 73 Pa. 406; Strauss v. Allentown, 215 Pa. 96.

*J. W. Clemens*, for appellee.—In regulating the flow of surface water on the streets, municipalities have no right to cast it upon adjacent property: Gift v. Reading, 3 Pa. Superior Ct. 359; Torrey v. Scranton City, 133 Pa. 173; Pittsburg, etc., Ry. Co. v. Gilleland, 56 Pa. 445; Bohan v. Avoca Borough, 154 Pa. 404; Weir v. Plymouth Borough, 148 Pa. 566.

OPINION BY RICE, P. J., February 26, 1909:

The boundary line between the borough of Minersville and the township of Branch crosses the premises of which the plaintiff was lessee at the time of the injury complained of. His premises abut in part on Delaware avenue, a borough street, and in part on the extension of the same highway in the township. The buildings he claims to have been injured are in the township. The borough constructed a paved gutter along Delaware avenue to the line of Branch township and there stopped. The allegation of the plaintiff's statement of claim is that at this end of the gutter the borough made no provision for carrying off the surface water that ran down it, but willfully, illegally and negligently allowed it to run out of said gutter and thence on and over the private property and yard of the plaintiff, and under certain buildings, in consequence of which the floors were made damp, and decayed, and the machinery in the buildings was rusted and thereby damaged.

It is important to notice that the statement of claim contains no allegation that in consequence of the construction of the gutter a greater body of water was brought to Delaware avenue than would naturally fall or flow there if the gutter had not been constructed; also, that the plaintiff adduced no evidence tending to show that such was the fact. It is claimed that the fact could be found from the testimony of Mr. McCaffey, the defendant's engineer, but we are unable to so construe his testimony, and we think a jury would not have been warranted in so construing it. He testified: "Delaware avenue is an old railroad bed, and the fall of the street, the track, is only about three inches in 100 feet, and when the brewing company came there they wanted to put in a siding, and I adopted a grade; that is, I made a grade to suit this track, and di-

verted the water for seven hundred feet from Sunbury street down Delaware avenue and carried it through the brewing property." Again being asked whether the quantity of water flowing in front of the plaintiff's property had been increased since the laying of the gutter he said: "No, sir; I cut off 700 feet of Delaware avenue down to the brewing company, and that left about 12,000 square feet, but about fifteen or twenty feet from the end of our gutter there is an inlet in the Barrett property." Later, being asked whether it had been diminished, he testified: "Undoubtedly; because I have taken away 700 feet of the street and diverted the water through the brewing company's property." We do not cite this testimony as being conclusive of the question whether the flow of water was increased or diminished, but for the purpose of showing that it does not warrant the assumption, upon which a considerable portion of the argument of plaintiff's counsel is based, that in the construction of the gutter the water that formerly flowed down Sunbury street was diverted from its natural course and carried down Delaware avenue. So far as any evidence shows, whether that of the plaintiff or of the defendant, it is only the water that naturally flows or falls on Delaware avenue that finds its way to the gutter. While the street is nearly flat, there is a slight descending grade toward the line between the borough and the township, and even before the gutter was constructed, some of the evidence adduced by the plaintiff shows, there was at times a flow of water down the street and thence into his yard. We are warranted in saying, therefore, that the injury complained of did not result from the borough's diversion or blocking up of any natural water course, or from its subjecting the highway upon which the plaintiff's property abuts to the drainage of any other street. The facts of the case distinguish it in material respects from the case of Torrey v. Scranton, 133 Pa. 173, and Bohan v. Avoca Borough, 154 Pa. 404.

While there was evidence from which a jury could find that the increase in the flow and volume of water that came to the plaintiff's premises was due to the construction of the gutter, there was also evidence from which the jury could find that it

was due to the acts of the property owners farther up the street. The plaintiff's father, who owns the premises, testified as follows in answer to the question whether he experienced any difficulty from the water before the gutter was built: "Yes; a little, but not so much, and now since they put the gutter, you know the lots used to be all open, it is built up at the brewery there and all the lots are filled up, and we have the whole force of the water. The water used to go into the full lots, the empty lots. Now since they put a gutter we have the whole water. We are at the tail end and take all the water. Q. Then you mean to say that all that water that used to go over on the lots goes down the street now? A. Yes; goes down the street." We quote further from his testimony: "Q. Then I understand you to say that when heavy rainstorms come, since the gutter was built, the surface of the street would be covered with four or five inches of water? A. Yes, sir. Q. Coming down with great rapidity? A. Yes, sir. Q. And turned into your yard? A. Enough to swim a boat. Q. Why did it come into your yard? A. Because the other lots were all filled up and the brewery lot was all filled up and the other lots are filled up, and we have all the water. We are the tail end and we have to take it all." If this flow of water, not only in the gutter but over the whole surface of the street, was due exclusively to the filling up of the adjacent lots by the property owners—if that is what the witness meant—the principle thus stated in the syllabus of Strauss v. Allentown, 215 Pa. 96, would seem to be applicable: "A city is not liable to a property owner for the increased flow of surface water over or onto his property, arising merely from the changes in the character of the surface produced by the opening of streets, building of houses, etc., in the ordinary and regular course of the expansion of the city."

There is still another aspect in which the sixth assignment of error requires us to consider the case, even though it be conceded as a fact that less water would have flowed to the plaintiff's premises if the gutter had not been constructed. As already noticed, the gravamen of the plaintiff's action was that the defendant's act was illegal and negligent; therefore, without proof of illegality or negligence, he could not recover, whatever

may have been the liability of the borough in some other form of proceeding. What the defendant did was to construct a paved gutter along a borough street for the purpose of draining the surface water on the street caused by rain or melting snow. There is no ground whatever for saying that in doing this the borough exceeded its power. It was a lawful act, and so far as appears in the evidence, there was no irregularity in the exercise of the power to make the improvement. As was said in Robinson v. Norwood Borough, 215 Pa. 375, we must assume, for nothing is shown in the evidence to the contrary, that the borough entered upon the improvement with due observance of all legal requirements, and that what it did in this connection it had a right to do. We come then to the allegation of negligence. It cannot be said that the gutter was left in an unfinished condition, as is set forth in the statement of claim. True, the gutter ended in the highway at the borough line, but there is nothing to show that this was not precisely what the borough in the exercise of its discretion intended to do, or, to state the proposition in another form, that the improvement authorized by the borough contemplated anything more being done than was done. Further, there is no evidence that the actual work was done negligently; that is, that owing to the use of defective materials, faulty construction, or other causes not contemplated by the borough the flow of water was directed in a way not intended. In short, if there was negligence, it was not in the execution of the plan adopted by the borough. This being so the plaintiff is necessarily compelled to take the position (and it would seem from the statement of claim that this is the position taken by him) that the borough is liable because the plan did not include any provision for disposing of the water when it came to the end of the gutter so that it would not flow from the highway onto private property. But assuming that by reason of the omission of the borough to make such provision the plaintiff's property was injured, was it such an injury as can be redressed in an action of trespass based on an allegation of negligence? We are of opinion that it was not.

The first section of the Act of May 16, 1891, P. L. 75, as amended by the Act of June 12, 1893, P. L. 459, provides that

all municipal corporations shall have power, whenever it shall be deemed necessary, inter alia, in the grading of streets, or in .the construction of slopes, embankments and sewers, or in the changing of water courses, to take, use, occupy or injure private lands, property or materials. And the eighth section provides that every. municipal corporation shall have power to lay out, establish or re-establish grades of streets and alleys, and to construct "sewers and drains in any street or alley, or through, or on, or over private property." The act also provides an elaborate and complete system for the assessment of damages and benefits caused by the making of such improvements. The street improvement in question was made in the exercise of these powers. But it is well settled that for such injury as is the direct, immediate, necessary and unavoidable consequence of the exercise of the power, a proceeding before viewers is the appropriate remedy, but for injury by negligent performance of the work the remedy is by action of trespass: Stork v. Philadelphia, 195 Pa. 101. In applying this rule, another equally important principle is to be kept in mind, namely that the discretionary power to construct sewers, drains and other improvements, and to select the plan, is vested in the municipal authorities. When it is said that the injury for which damages may be awarded in a proceeding before viewers must be the unavoidable consequence of the act of eminent domain, it is clearly not meant that the claimant may be turned out of court merely because, in the opinion of the viewers, the court or the jury, a different, and in other respects equally good, plan might have been adopted by the municipality, which would have worked no injury to adjoining properties. The question is, was the injury the necessary consequence of the execution of the plan adopted, or was it the consequence of negligence in executing the plan? In the former case the damages may be assessed in that form of proceeding, in the other case not: Chatham Street, 16 Pa. Superior Ct. 103. Since the adoption of the act of 1891 these principles have been quite rigidly adhered to and have been applied in numerous cases and under a variety of circumstances. Amongst the cases where the subject has been fully considered and discussed are Curran v. East Pittsburg Boro.,

20 Pa. Superior Ct. 590; Cooper v. Scranton, 21 Pa. Superior Ct. 17; Fyfe v. Turtle Creek Boro., 22 Pa. Superior Ct. 292; Herr v. Altoona, 31 Pa. Superior Ct. 375; Robinson v. Norwood Boro., 27 Pa. Superior Ct. 481; s. c., 215 Pa. 375. See also Power v. Ridgeway Boro., 149 Pa. 317; McKee v. Pittsburg, 7 Pa. Superior Ct. 397; Hoster v. Philadelphia, 12 Pa. Superior Ct. 224. Applying these principles to the facts of the present case we are of opinion that the plaintiff has not established his allegations of illegality and negligence, or either of them, and therefore the point of the defendant requesting a binding direction ought to have been affirmed.

The judgment is reversed.