# Truschine, Appellant, v. Fayette Mfg. Company.

*Negligence—Permissive pathway—Hole in path—Steam pipe under path.*

In an action against a manufacturing company to recover damages for personal injuries, the evidence showed that at the time of the accident the plaintiff was using a permissive pathway on the

right of way and along the tracks of a railroad company. The defendant by permission of the railroad company had laid two lines of pipes at a depth of four feet under the tracks and permissive pathway at right angles to the tracks and path. These pipes were four feet six inches in diameter and were a considerable distance apart. They were used as discharge pipes for exhaust steam and water condensed from steam, and emptied into a marsh a short distance from the pathway. The plaintiff passed over the pathway at four o'clock in the afternoon and found no signs of any break or hole. He returned at eleven o'clock in the evening, when, as he stated, he fell into a hole, sprained his ankle and scalded his leg. Six weeks after the accident he went back to the path for the first time and located the hole into which, he stated, he fell at two feet from the tracks and at a point about forty feet away from the pipes. There was evidence that the defendant made a hole two or three days after the accident and, from this work, it appeared that the ground around the pipes was firm. *Held*, (1) that the evidence was insufficient to show that the accident occurred on the pathway at a place within the path under which the pipes ran, or at a place that might be affected by their defective condition; (2) that even if the accident had occurred in such manner as the plaintiff alleged, the defendant was not bound by constructive notice of any break in the path occurring in the short interval between four o'clock and eleven o'clock; (3) that the use made of the pipes by the defendant was not inherently dangerous.

Generally the owner is not bound to know of the defect in a highway the moment it occurs, but if by a reasonable inspection the defect could have been ascertained, or from the kind of materials used and the place where used the defect is one that a prudent person should have known was likely to result, the question of notice is then for the jury.

Persons who have laid properly constructed steam pipes at a depth of four feet under a permissive highway are not bound by constructive notice the moment a defect in the pipes occurs.

Argued Nov. 16, 1915. Appeal, No. 214, Oct. T., 1915, by plaintiff, from judgment of C. P. Delaware Co., Dec. T., 1913, No. 38, for defendant n. o. v. in case of Frank Truschine v. Fayette Manufacturing Company. Before RICE, P. J., HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before BROOMALL, J.

At the trial the jury returned a verdict for plaintiff for $400.

On a motion for judgment n. o. v. BROOMALL, J., filed an opinion which was in part as follows:

Adjoining the premises of the defendant's plant on the south is the right of way of the Chester & Delaware River Railroad Company. Along the track of the railroad company on the south side is a path where the public is suffered by the railroad company to walk. The defendant company with the permission of the railroad company maintain two lines of pipe under ground for their plant across the railroad right of way. One of these pipes is ninety-five feet eastwardly from the east building line of Welsh street. This street is the westward boundary line of defendant's plant. The other pipe is two hundred and eighty feet eastwardly from the east building line of Welsh street. These pipes after they cross the railroad right of way have their discharging ends in the river meadow some fifteen or eighteen feet south of the path along the railroad. The eastern pipe is used for the discharge of hot water from 180 degrees to 200 degrees Fahrenheit. The western pipe is used for the discharge of exhaust steam.

On October 3, 1913, about 11 o'clock p. m., the plaintiff was walking eastwardly on the path alone. He testifies that he stepped into a hole, and scalded his leg in hot water which was in the hole. He sprained his leg. He says a great deal of steam came out and made a noise. He did not see the hole before he stepped into it, and has never seen it since. When he recovered from his injury about six weeks afterwards, he went to the place where the hole had been and located it as 80 paces east of Welsh street. He had passed along this path at 4 o'clock in the afternoon of the same day, and did not see any hole. His effort by this suit was to fix the re-

sponsibility for this hole on the defendant.   The burden of proof is on him.   The hole of which the plaintiff complains, if it was where he says it was, at the distance of 80 paces east of Welsh street, has not been connected with the defendant in any way.   One of the plaintiff's witnesses testified that on the morning of October 3, 1913, he observed smoke exuding from the ground between the path and the railroad track above the eastern drain 280 feet from Welsh street, but said there was no hole there.   Another of the plaintiff's witnesses saw the same thing on the morning of October 4, 1913, but said there was no hole there.   This was reported to the defendants and one of their workmen was sent two days afterward to investigate and make the necessary repairs. This man was called by the plaintiff as a witness who testified that there was no hole there.   He dug the ground down to the pipe.   The ground was firm.   He found a break in the pipe with a hole of the size of a finger nail.   He took out a section of the pipe and put in a new section.   This very clearly establishes that the hole, if any, was not at the eastern drain.   This turned attention to the western drain.   But the evidence disclosed no defect in this pipe.   Hence the plaintiff failed in his proofs.   If at the western drain there had been a hole in this path, which the public were accustomed to use, it was susceptible of proof.   The absence of proof induces speculation that the plaintiff had deviated from the path and fell down the bank into the scalding water at the end of the pipe some few feet from the path; and in the bewilderment with which he says he was affected he became infected with the notion that he had stepped into a hole.   On the trial we submitted the question of the defendant's negligence to the jury, and they rendered a verdict for the plaintiff.   Upon review we are unable to find any evidence upon which this verdict can rest. Hence we should have given binding instructions for a verdict in favor of the defendant,

128 TRUSCHINE, Appellant, *v.* FAYETTE MFG. CO.

Assignment of Error—Opinion of the Court. [63 Pa. Superior Ct.

*Error assigned* was in entering judgment for defendant n. o. v.

*Albert Dutton MacDade,* for appellant, cited: Finnegan v. Monongahela Water Co., 54 Pa. Superior Ct. 180; Payne v. Reese, 100 Pa. 301; Switzer v. Pittsburgh, 54 Pa. Superior Ct. 183; Shutt v. Cumberland Valley R. R. Co., 149 Pa. 266; Grimmer v. Penna. R. R. Co., 175 Pa. 1.

*Geo. T. Butler,* for appellee, cited: Philadelphia & Reading R. R. Co. v. Hummell, 44 Pa. 375; Taylor v. Del., Etc., Canal Co., 113 Pa. 162; Lodge v. Pittsburgh, Etc., R. R. Co., 243 Pa. 10.

OPINION BY KEPHART, J., March 1, 1916:

It was most essential for the plaintiff's case that some negligent act of the defendant, which caused his injury, be established. He cannot recover for the mere happening of an accident and whatever rules of law may be invoked governing the conduct or duty of persons under given conditions of fact the person wishing to be benefited by the enforcement of such rules must bring himself within the conditions to which the rules apply: Huey v. Gahlenbeck, 121 Pa. 238, and Stearns v. Ontario Spinning Co., 184 Pa. 519. The plaintiff was using a permissive pathway which ran along the tracks of the Philadelphia and Reading Railway Company. Under these tracks, at a depth of four feet, and running through the permissive pathway at right angles, were two lines of pipe used by defendants as discharge pipes for exhaust steam and water condensed from steam. They emptied into a marsh a short distance from the pathway. The plaintiff passed over this way at 4 o'clock going to his work and found no signs of any break or other defect in it. He returned at 11 o'clock when, as he states, he fell into a hole, sprained his ankle and scalded his leg. Nowhere in his testimony does he fix with any

degree of accuracy the place at which he was injured as being near the pipe line. His testimony and any inference from it would not warrant the jury in saying that he was injured at some point in this pathway over which this defendant exercised some dominion and at which it owed the plaintiff a duty of reasonable care. The defendant's control was not over the entire length and breadth of this permissive way as it extended longitudinally along the tracks but to a very small part of it. Its control was limited to that part covering these pipes, they being of a diameter of four and six inches and located some distance apart. To affect this defendant the testimony fixing the location should be such that from it some reasonable inference might be drawn that the accident occurred on the highway at a place within the path under which the pipes ran or that might be affected by their defective condition. The plaintiff testified that he had not seen the place where he fell until six weeks after the accident and then locates it two feet from the tracks and at a point about forty feet away from the pipes. His witnesses speak of a hole that was seen after the accident in the earth covering the pipes; it was not within the lines of the permissive pathway but under the railroad tracks. It was made in the earth two or three days after the accident occurred and when the defendant made the hole the plaintiff's testimony shows that the ground around the pipes was firm. It is clear that the accident could not have resulted from this hole. There was no accumulation of water in it nor was the earth flushed away by the action of the steam nor any condition such as the plaintiff describes. In discussing this question we have eliminated from our consideration the proposition submitted by the appellee that the plaintiff was a trespasser and therefore could not recover.

But appellant urges with much stress that the question as to the location of the accident was for the jury; but even if this were correct we are of the opinion that this action cannot be sustained. This accident occurred

at 11 o'clock; at 4 o'clock the passageway was in good condition. Assuming that he fell into a hole in the pathway or that the earth broke precipitating him into a hole, he does not bring his case within the rules of law governing the liabilities of the occupier of premises for the defective condition of a highway or passageway. We see no reason why under the circumstances those occupying property used as a permissive pathway should be held to a higher duty than the owners and occupiers of property abutting on public highways. Owners and occupiers of property abutting on highways, as well as a city where it is charged with the absolute duty to repair, are not insurers of every person who passes over the highway. A municipality charged with the absolute duty to repair must exercise a reasonable degree of care and prudence for the safety of pedestrians: Vanderslice v. City of Philadelphia, 103 Pa. 102; Kibele v. City of Philadelphia, 105 Pa. 41; Otto Township v. Wolf, 106 Pa. 608, and the mere absence of notice of a defect will not relieve the city from liability if by a reasonable inspection the condition could be ascertained; or if from the character of the defect it should have been known that deterioration, dilapidation, and decay causing the defect were the natural and ordinary consequences of the construction employed. This knowledge would charge the municipality with notice: Vanderslice v. City of Philadelphia; Kibele v. City of Philadelphia; Otto Township v. Wolf, supra. "Where there is a latent defect which causes an injury the city is not liable for damages unless it had notice; but a defect is not latent which can be seen by the exercise of reasonable care and examination," Vanderslice v. City of Philadelphia, supra, the neglect to repair after such implied notice being the neglect for which the municipality would be liable. "Negligence is the absence of proper care, caution and diligence. Of such care, caution and diligence as, under the circumstances, reasonable and ordinary prudence would require to be exercised. It may consist as well in not doing the

thing which ought to be done as in doing that which-
ought not to be done when in either case it has caused the
loss and damage to another": Kibele v. City of Philadel-
phia, supra.   Such is the law with respect to a munici-
pality charged with the absolute duty to repair.   Owners
of sidewalks: McLaughlin v. Kelly, 230 Pa. 251; Lind-
strom v. Pennsylvania Company, Etc., 212 Pa. 391, are
bound to exercise the same degree of care and diligence
in keeping the highway safe and secure: Dickson, et al.,
v. Hollister, 123 Pa. 421; McLaughlin v. Kelly, supra.
As a general rule either express or constructive notice
of the defect should be brought home to the owner or oc-
cupier but a shorter period of time implies notice to such
occupier or owner than to a municipality: McLaughlin
v. Kelly, supra.   We can conceive of such a state of facts
where notice may be implied the moment the defect is
created and further the defect need not be so notorious
as to be evident to all passers to charge an owner with
notice.   But generally an owner is not bound to know of
a defect the moment it occurs: Harrison, et al., v. Collins,
86 Pa. 153.   "While it is true, as the learned judge said,
'the instant that he ceased to use it (the coal hole), its
control reverted to the' plaintiffs in error; yet it does
not follow 'from that instant they were bound to protect
it.'   This is imposing too harsh terms on them.   If they
had no expectation that the hole would be uncovered or
thus used, and no knowledge that it was, they should
not be held liable until such reasonable time had elapsed,
under all the circumstances, that a careful and prudent
man ought to have discovered its dangerous condition.
If, after such reasonable time had elapsed, and they
failed to make the hole secure, they cannot be relieved
from the consequences of their own negligence": Bennett
v. Louisville & N. R. R. Co., 102 U. S. 577.   There may be
conditions where the owner or occupier assumes a control
of acts done and where notice is implied by reason of such
control: Spratt v. Reymer & Brothers, Incorporated, 57
Pa. Superior Ct. 566.   If by a reasonable inspection

the defect could have been ascertained or if from the kind of materials used and the place where they are used the defect is one that a prudent person should have known was likely to result, these circumstances are such as may cause the question of notice to be one for the jury. We have no evidence in this case that would sustain such finding on either ground. The place where the alleged defect is supposed to have existed and its character are not such as would imply notice the moment the defect occurred. In the cases cited by the appellant to sustain his contention, wherein a municipality has been charged with the absolute duty to repair, there was in evidence a previous condition which affected the city with notice of the defective highway.

We do not agree that the use made of the pipes was inherently dangerous. It was a lawful construction in a lawful place. In our cities we have miles of steam pipes under the ground conveying steam to heat public and private dwellings. Such use and the construction employed are not of themselves inherently dangerous. They only become dangerous through improper construction or when a pipe springs a leak and is not repaired in due time. In this respect they are like gas, water and sewer pipes, telegraph and electric conduits out of repair. They become dangerous agencies by reason of neglect after proper notice to those whose duty it is to keep them in repair. There is no evidence of improper construction in this case. The defendant, as the occupier of premises subjected to a permissive pathway, if liable at all, would not be liable under the facts as here presented from any viewpoint.

The assignments of error are overruled and the judgment is affirmed.